**EXXON COMPANY USA, a Division of Exxon Corporation**

v.

**TOWN OF CHELMSFORD**
**Carolyn BENNETT, Charles HIGGINS, Daniel BURKE, Florence KELLEY and Denis VALDINOCCI, Members of the Board of Appeals of the Town of Chelmsford**

**No. 80-5286**

Superior Court
Commonwealth of Massachusetts

**September 30, 1981**

**Patricia S. Nelson,** counsel for plaintiff
**David C. Johnson,** counsel for plaintiff
**James M. Harrington,** counsel for defendant

**MEMORANDUM OF DECISION**

In the above case, plaintiff appeals pursuant to G.L. c. 40A, sec. 17 from a decision of the Board of Appeals of the

Town of Chelmsford dated September 25, 1980, rejecting plaintiff's contentions that its planned changes in its gasoline service station in Chelmsford were proper enlargements of its non-conforming use, and also denying plaintiff's subsequent application for a special permit for such changes.

The case was heard on Friday, September 18, 1981; evidence was submitted on behalf of plaintiff from Jay Huong, and Robert Blumenthal, and a number of exhibits were received. Defendant offered no evidence. The case was argued and briefed.

The Court makes the following:

## FINDINGS OF FACT

1. Plaintiff acquired title to the land in Chelmsford at the corner of Fletcher and Chelmsford Street in 1961.

2. In 1962, plaintiff constructed a gasoline service station on the land in question (sometimes hereafter referred to as "the locus"), see Exhibit 2B, and 3 (#2 through 16, and 22), stipulated to be a non-conforming use.

The station consisted of two islands with three single-hose pumps each, capable of serving six cars simultaneously.

3. In 1965, plaintiff commenced a modernization program of all of its stations. It wished to mute the color scheme and make the stations more attractive by constructing an overhead canopy which would enhance, I infer, illumination in the area of the pumps, and protect customers and employees from bad weather.

4. On July 2, 1980, plaintiff applied to the Building Inspector of the Town of Chelmsford, Exhibit 1, and submitted plans, Exhibit 2A (copy annexed), C and D, which would have, if allowed, resulted in such a canopy and a change from two three-hose islands to two four-hose islands, which would have permitted serving eight cars at a time.

Plaintiff sought to accomplish a change comparable to that in Methuen, see Exhibit 3—number 22 and 23.

5. The canopy was to extend from 13'-17' above ground, 50' x 30' in the horizontal plane, set back 8' from the highway, with supporting columns beginning 21' back from the highway, standing free and independent of the present structure.

6. Contemporaneous with the application to construct the canopy and to change the island configurations, plaintiff applied to other town boards for permission to install new fiberglass tanks underground, and to change the appearance of the station. These requests were granted.

7. On July 21, 1980, the Building Inspector denied plaintiff's application stating that, in his opinion, the construction of the canopy and change of the islands constituted an extension of non-conforming use for which a special permit was required, Exhibit 4.

8. Thereafter, in July, 1980, plaintiff applied for such a special permit, Exhibit 5.

9. A hearing was held by the Board of Appeals on September 4, 1980, at which Attorney Johnson represented plaintiff and presented the plans referred to above.

10. On September 25, 1980, the Board of Appeals denied plaintiff's application for a special permit, relying on its conclusion that "this change is substantially more detrimental to the area as the additional dispensing units will tend to attract more traffic," Exhibit 7. The Board also found that the structural changes would constitute an extension of a non-conforming use.

11. There was considerable other business activity in the area, see Exhibit 5, including a Citgo station near the center of Chelmsford which had a canopy similar to that sought by plaintiff. There was no evidence when the Citgo canopy was built. See Exhibit 3—number 20, 21.

12. There are 24,959 automobiles passing by the locus during the average

24-hour weekday. There have been no accidents in the vicinity of the locus since 1974. The station can be readily seen by a driver from 700 feet north of its location and from 1600 feet south.

13. The factors governing the use of a gas station, in descending order of importance, are (1) location, (2) price, (3) service hours and quality, (4) access from the highway, and (5) aesthetics.

13. The additional two hoses may make the station a trifle more attractive, since there is a better chance of a hose being free, but I find that this factor is very minimal.

14. I find that the construction of the islands as proposed, with the canopy, would add only infinitesimally, and immeasurably, to the traffic in the vicinity of the locus.

## STANDARD OF REVIEW

The function of this Court on such an appeal is to find the facts **de novo,** giving no weight to factual findings by the Board of Appeals, to apply the applicable law, and decide whether the Board exceeded its authority in its decision. **Garvey v. Board of Appeals of Amherst,** 1980 Mass. App. Ct. Adv. Sh. 415.

## CONTENTIONS OF THE PARTIES

Defendant contended that the non-conforming use, enjoyed by plaintiff, would permit increased use of the same nature and kind, but not any change in structure. A change in structure which amounted to an alteration, which plaintiff proposes, requires the Board of Appeals to grant a special permit on a finding that such would not be more detrimental to the neighborhood. The Board was legally entitled to find the change to be detrimental.

Plaintiff contends that the reconstruction, including the canopy, was not an extension of the non-conforming use since it was for the same use. The Court should examine the facts only for the reasons set forth by the Board of Appeals.

The Board of Appeals found that two four-hose islands would attract traffic but made no reference to the canopy as being more detrimental to the area. Since the evidence does not support a finding of increased traffic, the decision was legally untenable, and should be annulled.

## DISCUSSION

Chapter 40A, relevant Section 6, as I read it, provides that a zoning by-law ordinance shall not apply to structures or uses lawfully in existence before adoption of the by-law or ordinance, but shall apply to any substantial extension of such **use,** and to . . . (2) any reconstruction, extension or structural change of any such structure and (3) any alteration of such structure to provide for its use for the same purpose . . . (c) to a substantially greater extent (numbering added). Pre-existing non-conforming structures may be extended or altered on a finding by the special permit granting authority that such shall not be substantially more detrimental to the neighborhood.

The Chelmsford By-Law, Exhibit 11, Section 2400, non-conforming uses—extension or alteration, provides: non-conforming structures or uses existing at the time of the enactment or subsequent amendment of this by-law may be extended, altered, or changed in use on special permits if the Board of Appeals finds that such will not be more detrimental to the neighborhood.

This by-law on the facts of this case conforms to the statute. There was no argument that the standards were deficient. **Owens v. Board of Appeals of Belmont,** 1981 Mass. App. Ct. Adv. Sh. 731.

The proposal clearly contemplated a structural change. The finding that more traffic would be attracted is not supported by this Court's findings, and is legally untenable. **Cape Ann Land Development Corp. v. City Council of Gloucester,** 374 Mass. 825, 826 (1978); **Mahoney v. Board of Appeals of Winchester,** 344 Mass. 598

(1962) 601-602. See also, **McDonald's, infra.**

For the reasons set forth below, the Court is not required to decide whether the change from six to eight hoses is a substantial extension of the same use. **Board of Appeals of Dedham v. Corp. Tifereth Israel,** 7 Mass. App. 876 (1979).

With respect to the canopy, the Board made no independent finding that it would be more detrimental. However, the Board has much discretion, **Subaru of New England, Inc. v. Board of Appeals of Canton,** 1979 Mass. App. Adv. Sh. 2024, 2028-2029, and the Court cannot substitute its judgment.

The Board should reconsider whether the canopy independently is more detrimental, and pursuant to **McDonald's Corp. v. Board of Selectmen of Randolph,** 1980 Mass. App. Adv. Sh. 97, the matter is remanded for further proceedings.

The basis of any further finding adverse to plaintiff should be on clear subsidiary findings. **Wajda's** case, 6 Mass. App. 865; **Save the Bay, Inc. v. D.P.U.,** 366 Mass. 667, 687 (1975).

## ORDER

This matter is remanded to the Board of Appeals for further proceedings.

**Robert J. Hallisey**
**Justice of the Superior Court**

9/30/81