Hillman, J.
The plaintiffs, Ernest C. and Patricia L. Houston, bring this action to recover against the defendant law firm Greenwald, Greenwald and Powers, for allegedly rendering an incorrect certificate of title in connection with the plaintiffs purchase of a single-family home located on Irene Court, in Belling-ham, Massachusetts. The defendant represented the plaintiffs’ mortgage lender, and purportedly rendered a certificate of title, in accordance with G.L.c. 93, §70. The plaintiffs subsequently discovered a title defect, and seek recovery under the following theories: violation of G.L.c. 93, §70; deceit; breach of a duty of good faith and fair dealing; negligent misrepresentation; breach of warranty; and violation of G.L.c. 93A. Both plaintiffs and defendant moved for summary judgment. For the following reasons, summary judgment is ALLOWED in favor of the defendant.

BACKGROUND

The undisputed material facts as established by the summary judgment record are as follows. This matter arises out of the plaintiffs’ purchase of a parcel of property in Bellingham, Massachusetts from Alfred DaPrato, Trustee of the Fredap Realty Trust in 1992. DaPrato built a house on the property as part of the purchase transaction. The plaintiffs made arrangements to purchase and occupy the single-family home, which is located at 19 Irene Court in Bellingham, Massachusetts. In furtherance of this purchase, the plaintiffs took a loan from First Eastern Mortgage Company (First Eastern) and granted a purchase money first mortgage to First Eastern to finance the purchase. Stefan M. Nathanson, an attorney employed by the defendant law firm, represented First Eastern at the June 30, 1992 closing. As is customary, the plaintiffs paid the fees and expenses incurred as a result of the defendant’s delivery of legal services to the bank. The charges included a closing fee, title examination fee, and document preparation fee. On July 1, 1992, Jacqueline Nastro Hathaway, an employee of the defendant law firm, certified title to the property. The certificate of title indicated that, at the time of recording, the plaintiffs had good, clear and marketable title to Lot 9, Irene Court, Bellingham, Massachusetts.[2] She mailed a copy of this certification to the plaintiffs. Several years later, in April of 1996, the plaintiffs discovered there was a problem with their title. Both the deed and the mortgage described the wrong property, which has been subdivided and conveyed by prior lot deeds. Because of this error, the plaintiffs do not own the land upon which their house sits, however, they continue to reside at their home on 19 Irene Court.

DISCUSSION

“Summary judgment is proper when there is no genuine issue of material fact or when resolution of the case depends solely on answers to questions of law.” Gross v. Prudential Insurance Co. of America, 48 Mass.App.Ct. 115, 118 (1999). The moving party, “bears the burden of affirmatively demonstrating the absence of a triable issue.” Jackson v. Commissioner of Correction. 40 Mass.App.Ct. 127, 130 (1996). Once the moving party establishes the absence of a triable issue, the opposing party must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson v. Time, Inc. 404 Mass 14, 17 (1989). The party opposing summary judgment must adequately bring any factual disputes to the attention of the trial judge. Dupont v. Dracut, 41 Mass.App.Ct. 293, 297, (1996), citing Berry v. Dawes, 34 Mass.App.Ct. 506, 508 n. 3 (1993). These disputed *648 facts must be supported by affidavits or other documents. Mass.R.Civ.P. 56. See Dupont v. Dracut, supra at 297. “[B]are assertions and conclusions regarding [an individual's] understandings, beliefs, and assumptions are not enough to withstand a well- pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Envtl. Servs. (N.J.), Inc., 416 Mass. 684, 696 (1993). Where, as here, both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983).
The question presented in this case is what duty, to the plaintiffs, arises out of the defendant law firm’s representation of the plaintiffs’ mortgage lender in the above-mentioned real estate transaction. Other than the obligations imposed by G.L.c. 93, §70, attorneys representing a mortgage lender do not, under ordinary circumstances, owe a duty to the mortgagor. See Page v. Frazier, 388 Mass. 55, 61-65 (1983). In accordance with this principle, the plaintiffs assert that the defendant owed them-a duty not under the traditional attorney-client relationship, but only under G.L.c. 93, §70.
I. Title Certification Requirement
G.L.c. 93 §70 provides, in relevant part:
In connection with the granting of any loan or credit to be secured by a purchased first money mortgage on real estate improved with a dwelling designed to be occupied by not more than four families and occupied or to be occupied in whole or in part by the mortgagor, if the mortgagor is required or agrees to pay or be responsible for any fee or expense charged or incurred by an attorney acting for or on behalf of the mortgagee in connection with the rendering of a certification of title to the mortgaged premises, such certification shall be rendered to the mortgagor and the mortgagee.[3]
The closing documents indicate that the plaintiffs paid the legal fees resulting from the transaction. A title examination fee comprised part of these fees. Consequently, the requirement that the mortgagor-plaintiffs pay an expense charged in connection with title certification has been fulfilled, and the defendant was therefore statutorily required to certify title to both the plaintiff-mortgagors and the lender-mortgagee. The plaintiffs argue that, because the title certification listed the wrong property, the defendant violated the statute. The court disagrees, because the mortgage and certification of title described the same premises, thereby satisfying the statutory requirement that the defendant certify title to the mortgaged premises.[4] “When language of a statute is clear and unambiguous, plain meaning of language must be given effect. ” Cohen v. Commissioner of Division of Medical Assistance, 423 Mass. 399, 409 (1996), quoting Construction Indus. of Mass. v. Commissioner of Labor & Indus., 406 Mass. 162, 167 (1989). Whether the title certification was rendered in accordance with the statute is a separate question, which the court now addresses.
II. G.L.c. 93, §70 — Fifty-Year Title Search
G.L.c. 93, §70 requires that, “. . . said certification shall include a title examination which covers a period of at least fifty years with the earliest instrument being a warranty or quitclaim deed which on its face does not suggest a defect in said title ...” The plaintiffs assert that the title examination did not meet the above-mentioned requirements. In making this claim, the plaintiffs rely on the affidavit of Susan DeCoster Buxton, a title examiner for the defendant law firm. According to her affidavit, Ms. Buxton was instructed to perform a title “run-down,” instead of the full fifty-year search, which the statute requires. The plaintiffs further support their claim with an affidavit of Attorney James L. Roberti, indicating that, based upon his review of the documentary evidence, the law firm did not conduct a fifty-year title examination. The certificate of title states “Note: this certificate is based on a fifty year title run.”
The defendant claims it performed a fifty-year title examination because, in addition to doing a partial title examination, it used a “back title” to cover the statutorily required fifty-year period. According to the defendants, where their firm had previously examined the title of a parcel that included property to be currently examined, or a parcel having common ownership with the property currently under examination, the firm’s custom and practice was to rely on the search previously conducted, and perform the current search only from the emjing date of the prior search to the present. “Of the many areas of law practice, conveyancing is one which lends itself particularly to formulation through decisional law and commentary as to what are appropriate procedures. There maybe no definitive rules which prescribe a right or wrong way to conduct a deposition but certain rules have evolved for passing on a title.” Fall River Savings Bank v. Callahan, 18 Mass.App.Ct. 76, 83 (1984). According to the defendants, this use of a “back title” is a common and accepted practice in Massachusetts real estate conveyancing, especially with respect to title examinations of lots in sub-divisions. The defendants maintain that, in performing the title examination at issue, they relied on a “back title” and contend that their use of this labor saving procedure does not mean that there was no fifty-year title examination, but rather that a portion of the required search was already performed, and used to produce the current title certificate. The defendant asserts that the previous “back title,” in combination with the examination Ms. Buxton performed, constitutes the equivalent of a fifty-year title examination. Because Attorney Roberti failed to consider this, his conclusion the firm failed to perform a fifty-year title search is incorrect. This raises the *649 following question of law: whether the use of a back title, in rendering title certification, satisfies the above-mentioned fifty-year search requirement.
In deciding this question, the court finds instructive the following definition of “title search.” “An examination of the records of the registry of deeds or other office which contains records of title documents to determine whether title to the property is good, i.e. whether there are any defects in title. The examiner then prepares an abstract of the documents examined.” Blacks Law Dictionary (6th ed. 1990). “Examination” is defined as: “(A]n investigation; search; inspection; interrogation.” Id. at 55. It is well established that the words used in a statute will be interpreted with regard to both their literal meaning and the purpose and history of the statute within which they appear. Town of Dover v. Massachusetts Water Resources Authority, 414 Mass. 274, 280 (1993), citing Massachusetts Hosp. Ass'n v. Department of Medical Sec., 412 Mass. 340, 346 (1992). “Where the language of a statute is plain, it is the sole function of the courts ... to enforce it according to its terms.” D'Avella v. McGonigle, 429 Mass. 820, 823-24 (1999), quoting Boston Neighborhood Taxi Ass’n. v. Department of Public Utilities, 410 Mass. 686, 690 (1991). In applying the above-mentioned definitions and principles of statutory construction to the statute, this court finds that the defendants’ use of a back title, as part of the required fifty-year title examination, satisfied the title examination requirement of G.L.c. 93, §70.
fil. G.L.c. 93, §70 — Willful Failure to Render Certificate of Title
G.L.c. 93, §70 allows for recovery under G.L.c. 93A where an attorney who is statutorily required to render a certificate of title fails to do so. The certificate in question, which identifies the plaintiffs as mortgagors, reads in relevant part: “We also hereby certify to said mortgagee and mortgagors that at the time of recording said mortgage, the mortgagors held good, clear, marketable title record to the premises described in said mortgage...” The certificate of title was rendered, by mail, to the plaintiffs. Consequently, as this court finds no failure to certify title, it does not reach the question of willfulness. As a result of this finding, G.L.c. 93, §70 limits the plaintiffs’ recoverable damages, under the aforementioned common-law claims to the amount of consideration shown on the deed.
IV. Deceit
In order to prevail on their deceit claim, the plaintiffs must prove “that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.” Danca v. Taunton Savings Bank, 385 Mass. 1, 7 (1982), quoting Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963). The only communication between the plaintiffs and defendant, which the plaintiffs offer in support of their claim, consists of an April 1992 letter from the defendants indicating that, inter alia, before the closing could be scheduled, “We must satisfy ourselves that your seller has good title to the property.” The letter also indicated that, prior to the closing, the defendant must obtain a municipal lien certificate and plot plan. If no problems were encountered, the letter indicated that the defendant would contact the plaintiffs, upon completion of the legal work. This letter is devoid of any factual representation as to the state of the title at issue. However, the plaintiffs appear to claim that, by virtue of the above-mentioned statements, the defendant misrepresented that the loan would not close unless and until the title was good. This is a statement indicating what is expected to occur in the future. As the defendant correctly points out, in a deceit claim, “false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable.” Saxon Theatre Corp. of Boston v. Sage, 347 Mass. 662, 667 (1964), quoting Yerid v. Mason, 341 Mass. 527, 530 (1960). Consequently, the forward-looking statement that the loan would not close until title was good cannot, as a matter of law, form the basis of the plaintiffs’ deceit claim. Moreover, even if the above-mentioned statement constituted a misrepresentation, the plaintiffs must prove that they detrimentally and justifiably relied upon it. Golber v. BayBank Valley Trust Co., 46 Mass.App.Ct. 256, 257 (1999). While the plaintiffs spend much of their memorandum discussing what facts they expect witnesses to testify to at trial, there is no mention of any evidence, existing or expected, relating to the plaintiffs’ reliance upon the alleged misrepresentation. See Page, 388 Mass. at 67. Consequently, since the plaintiffs have failed to satisfy a required element of their claim, summary judgment must enter for the defendant with respect to the deceit count of the complaint.
V. Negligent Misrepresentation
According to the defendant, in order to prove negligent misrepresentation, the plaintiffs must establish that the defendants, (1) in the course of their business; (2) supplied false information for the guidance of others in their business transactions; (3) are subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; (4) failed to exercise reasonable care or competence in obtaining or communicating the information. Restatement (Second) of Torts, §522; see NYCAL v. KPMG Peat Marwick LLP, 426 Mass. 491, 496 (1998). The plaintiffs claim that the Craig principle of foreseeable reliance provides a basis for finding liability. Craig v. Everett M. Brooks Co., 351 Mass. 497 (1967). According to this principle, a professional’s duly to a third party arises when the defendant knows of the plaintiffs identity and the precise purpose for which the work was to be performed, as well as the plaintiffs’ reliance on the work. Id. Although it is unclear what specifically the *650 plaintiffs rely upon in alleging negligent misrepresentation, they could not have relied upon the title certification, because it was rendered after the closing. Furthermore, the reasonableness of the plaintiffs’ reliance on the statements contained in the above-mentioned letter is questionable because, in addition to enumerating what must occur before the closing, the letter advises the plaintiffs to provide the defendant with the identity of the plaintiffs’ attorney, “. . . [I]fyou intend to be represented in this matter.” Aside from the reasonableness issue, this claim must also fail for the same reason that the deceit claim fails; the record does not show that the plaintiffs made inquiry as to the condition of the title, nor that the defendants made any representation with respect to the status of the title prior to closing. See Page, supra. In the absence of affirmative conduct on the part of the defendants, there could be “no reasonable understanding or reliance by the plaintiffs at the time the plaintiffs would have had to rely on such conduct, i.e. before they closed the sale.” Id. Therefore, with respect to the claim for negligent misrepresentation, summary judgment must enter for the defendant.

VI.Breach of Warranty

It is the plaintiffs’ position, without any citation to legal authority, that the certificate of title, rendered pursuant to G.L.c. 93, §70, constituted a warranty that the defendants breached, by improperly certifying title. “A party opposing summary judgment is not entitled to rely upon vague and general allegations of expected proof and conclusions of law.” D&P Equipment Corp. v. Harvey Construction Corp., Inc., 5 Mass.App.Ct. 851, 852 (1977); See Community +relationship, the plaintiffs will be precluded from advancing a claim for breach of warranty.
VII.Breach of Covenant of Good Faith and Fair Dealing
The plaintiffs further allege that defendant breached an implied covenant of good faith and fair dealing. To support such a claim, however, the plaintiffs must demonstrate the existence of a contract. As the plaintiffs correctly point out, “Every contract implies good faith and fair dealing between the parties to it.” Warner Ins. Co. v. Commissioner of Ins. 406 Mass. 354, 362 n. 9 (1990), quoting Kerrigan v. Boston, 361 Mass. 24, 33 (1974). The implied covenant of good faith and fair dealing provides “that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Anthony’s Pier Four, Inc. v. NBC Associates, 411 Mass. 451, 471-72 (1991). While the plaintiffs’ statements of law are correct, their claim fails because the plaintiffs cannot demonstrate the execution of a contract between them and defendant. See Levenson v. LMI Realty Corp., 31 Mass.App.Ct. 127, 131 (1991) (holding where parties had not reached a binding contract, the implied covenant of good faith and fair dealing did not apply). In fact, the implied covenant of good faith and fair dealing is specifically derived from the Uniform Commercial Code, G.L.c. 106, §1-203, which provides that “(e)very contract within this chapter imposes an obligation of good faith in its performance or enforcement.” Fortune v. National Cash Register, 373 Mass. 96, 102-03 (1977). Here, the plaintiffs admit that the existence of an attorney-client relationship between the parties is irrelevant, and the defendant’s sole obligation was to certify title in accordance with G.L.c. 93, §70. Consequently, the implied covenant of good faith and fair dealing has no application to the instant matter. As no contract existed between the parties with respect to the alleged breach of covenant of good faith and fair dealing, summary judgment must enter for the defendant.

VIII.Violation of G.L.c. 93A

The plaintiffs allege that the defendant committed an unfair and deceptive practice by failing to certify title. They base this claim on G.L.c. 93, §70, which provides in relevant part, “[WJillful failure by an attorney to render a certification to the mortgagor as required by the provisions of this section shall constitute an unfair or deceptive practice under the provisions of Chapter 93A.” As this court ruled that the defendant rendered a certificate of title, the express provision allowing Chapter 93A recovery for failure to certify title cannot be invoked. Since this court has found no failure to certify title, which is the sole basis of the plaintiffs’ Chapter 93A claim, summary judgment must enter for the defendant.

ORDER

It is therefore ORDERED that the plaintiffs’ motion for summaryjudgment is DENIED. It is further ordered that the defendants’ motion for summaryjudgment is ALLOWED.

The certification of title stated that there were certain encumbrances upon DaPrato’s title to the property, including easements to American Telephone and Telegraph Company, Massachusetts Electric, New England Telephone and Telegraph and a railway easement.

 This statute has since been modified by St. 1994 c. 350, §3.

 The mortgage lists the property as “Lot 9 Irene Court, Bellingham, Massachusetts, 02019.” The Certification ofTitle lists the property as “Lot 9 Irene Court, Bellingham, Norfolk County, Massachusetts, as shown on a Plan recorded with the Norfolk Registry of Deeds Plan #598 of 1959 in book 4611, Page 597.”